| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| SANDRA LACAP, § | |
| § | |
| Plaintiff, § | |
| § | |
| versus § | |
| § | CIVIL ACTION NO. 1:11-CV-193 |
| MEDI-DYN, INC., CROTHALL § | |
| SERVICES GROUP, INC., and § | |
| CROTHALL HEALTHCARE, INC., § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendants Medi-Dyn, Inc., Crothall Services Group, Inc., and Crothall Healthcare, Inc.'s (collectively, "Defendants") Motion for Summary Judgment (#23), wherein Defendants contend they are entitled to judgment as a matter of law on Plaintiff Sandra LaCap's ("LaCap") negligence claims. Having considered the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Defendants' motion should be granted.

I.  Background

This is a personal injury action arising from a slip and fall that occurred on March 4, 2009. At the time of the incident, LaCap was employed by Memorial Hermann Baptist Hospital ("Memorial Hermann") in Orange, Texas, in the Housekeeping Department. Medi-Dyn was a party to a contract ("Baptist Hospital contract") with Baptist Hospitals of Southeast Texas ("Baptist Hospitals") to supervise housekeeping services at various hospitals, including Memorial Hermann. Thereafter, the Crothall Defendants purchased Medi-Dyn and assumed the service

contract.[1]  The contract provides under the Scope of Agreement section that "Medi-Dyn will provide certain management personnel, housekeeping cleaning supplies, and management and training systems necessary for the Hospital to operate its Environmental Services function . . . in a way that will achieve a high quality of service in a cost-effective manner."  Further, under the "Status" section, it states that "Medi-Dyn is acting solely in the capacity of an independent contractor, is not the agent of the Hospital and has no power or authority to incur any obligation on the part of the Hospital nor bind the Hospital to any agreement without the express written authority of the Hospital."  Kermit Moreau ("Moreau"), a regional manager for Crothall Healthcare, stated in his affidavit that Defendants "provided management systems and training programs," as well as some of the cleaning supplies, but did not provide "any of the 'floor stripping machines' that are used at [Memorial Hermann]."

As an employee of the Housekeeping Department, LaCap's responsibilities included cleaning the floors and rooms as well as operating the floor stripping machines.  On the day in question, she alleges that while using the floor stripping machine, she slipped and fell to the ground, injuring herself.  LaCap asserts that she previously requested, but was never provided, adequate safety equipment to operate the floor stripping machine—specifically, nonskid shoes.  As a result, Lacap maintains that her injury was caused by Defendants' breach of their duty to provide proper safety attire.

On November 15, 2010, LaCap filed suit in state court, asserting negligence claims.  On April 26, 2011, Defendants removed the case.  On October 19, 2012, Defendants filed the instant

---

[1] For the sake of simplicity, the court will refer to Medi-Dyn and the Crothall Defendants collectively as "Defendants," while recognizing that the entities are/were not coexistent.

motion, arguing that, pursuant to their contract with Baptist Hospitals, they were independent contractors and, thus, owed no duty to LaCap, Memorial Hermann's employee. In the alternative, Defendants assert that they had no duty to provide LaCap with nonskid shoes. In response, LaCap contends that Defendants owed her a duty based on three theories: (1) the harm was foreseeable and Defendants knew that she previously slipped but did not fall when performing floor stripping; (2) the contract between Defendants and Memorial Hermann created a duty; and (3) Defendants took an affirmative action to provide technicians with nonskid shoes and, thus, had a duty to use reasonable care.

II.   Analysis

    A.   Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d

446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454. The moving parties, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable

to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith ex rel. Estate of Smith*, 391 F.3d at 624. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil &*

*Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B. <u>Negligence under Texas Law</u>

Under Texas law, a negligence claim consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury. *See Espinoza v. Cargill Meat Solutions Corp.*, 622 F.3d 432, 443 (5th Cir. 2010); *Boudreaux v. Swift Transp.*

*Co.*, 402 F.3d 536, 540-41 (5th Cir. 2005); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 663 (Tex. 1999). "Whether a legal duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question." *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999) (citing *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex. 1995); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994)); *see Boudreaux*, 402 F.3d at 541. If the defendants owed no duty, they cannot be found liable for negligence. *See Boudreaux*, 402 F.3d at 542 n.19; *Thapar*, 994 S.W.2d at 637 (citing *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.), *cert. denied*, 525 U.S. 1019 (1998)).

"A duty is a legally enforceable obligation to conform to a particular standard of conduct." *San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312, 317 (Tex. App.—Corpus Christi 2000, no pet.); *accord City of Houston v. Jenkins*, 363 S.W.3d 808, 817 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). "Generally, there is 'no duty to take action to prevent harm to others absent certain special relationships or circumstances.'" *Gonzales v. O'Brien*, 305 S.W.3d 186, 189 (Tex. App.—San Antonio 2009, no pet.) (quoting *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000)). The court, however, may "recognize a new duty based on the risk-utility balancing test." *Id*. In assessing the existence of a duty, the court considers "'several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.'" *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 544 (Tex. 1998) (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)); *accord Boudreaux*, 402 F.3d at 541 n.16. Of

7

these factors, foreseeability of the risk is the dominant consideration. *Boudreaux*, 402 F.3d at 541; *Greater Houston Transp. Co.*, 801 S.W.2d at 525.

"It is well established that an employer has certain nondelegable and continuous duties to his employees." *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975), *overruled on other grounds by* 565 S.W.2d 512 (Tex. 1978); *Dodge v. Durdin*, 187 S.W.3d 523, 530 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Specifically, an employer has a duty to use ordinary care in providing a safe workplace, including a duty to provide needed safety equipment. *Elwood*, 197 S.W.3d at 794; *accord Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 n.15 (Tex. 2008) (citing duties owed by employer to its employees). In this instance, there is no dispute that LaCap was an employee of Memorial Hermann and not of Defendants. Indeed, pursuant to the Baptist Hospital contract, Defendants were independent contractors of the hospital. "A contract between the parties which establishes an independent contractor relationship is determinative of the parties' relationship in the absence of extrinsic evidence indicating that the contract was a subterfuge or that the hiring party exercised control in a manner inconsistent with the contractual provisions." *Ross v. Tex. One P'ship*, 796 S.W.2d 206, 210 (Tex. App.—Dallas 1990, writ denied); *see Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992); *Love*, 380 S.W.2d at 590; *Tex. Workers' Compensation Ins. Facility v. Pers. Servs. Inc.*, 895 S.W.2d 889, 893 (Tex. App.—Austin 1995, no pet.). The Baptist Hospital contract clearly states that Medi-Dyn is an independent contractor, and LaCap does not dispute that status. Thus, Defendants owed no common-law duty to Lacap, who was not their employee, to maintain a safe workplace.

1.      Duty Imposed by Contract or "Control"

LaCap nevertheless argues that the duty to provide her with nonskid shoes arises from the Baptist Hospital contract. Specifically, she concludes that "there was a duty imposed by contract to provider [her] with non-slip shoes." While it is true that "a duty can be assumed by contract or imposed by law," *J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 530 (Tex. App.—Austin 2009, no pet.), the language of the Baptist Hospital contract does not create a duty to provide a safe workplace. It merely required that Defendants provide supplies, management personnel, and management training systems "necessary for the Hospital to operate its Environmental Services function." The contract does not, however, wholly delegate to Defendants the Environmental Services function or the duty to provide a safe workplace for Memorial Hermann's employees. Furthermore, the contract expressly excepts "personal protective items" from the list of items to be supplied by Defendants to Memorial Hermann under the agreement. Therefore, the Baptist Hospital contract did not impose a duty on Defendants to provide a safe workplace or nonskid shoes.

LaCap's argument that a duty of reasonable care arises from Defendants' "control" of the housekeeping function is also unavailing. Citing *Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778 (Tex. 2001), and *Exxon Corp. v. Quinn*, 726 S.W.2d 17 (Tex. 1987), LaCap contends that Defendants had a duty to conduct their work in a safe manner because Defendants controlled the housekeepers and floor technicians and "were involved in placing [LaCap] and other hospital employees in the position of stripping and waxing the floors." These cases, however, are inapposite, as they involve either a general contractor's duty to a sub-contractor's employees or an independent contractor's duty to a landowner. *See, e.g.*, *Lee Lewis Constr., Inc.*, 70 S.W.3d

at 783 (discussing a general contractor's duties to a subcontractor's employees); *Exxon Corp. v. Quinn*, 726 S.W.2d at 19-20 (explaining that an independent contractor has the responsibility for conducting a task in a safe manner when "'the activity is conducted by, and is under the control of an independent contractor, and where the danger arises' out of the employees' performance of the task" (quoting *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex. 1976)).[2]

Even if these cases were applicable, the facts in this instance demonstrate that Memorial Hermann, not Defendants, was responsible for directing hospital employees' tasks and duties. In fact, LaCap was instructed to strip and wax the floor by her supervisor Hermann Williams ("Williams"), a Memorial Hermann employee. Although Juan Perales ("Perales"), Defendants' employee, testified that he was responsible for "rounding" and making recommendations regarding safety and what tasks needed to be performed including stripping, "merely making recommendations is no evidence of a right to control." *Poynor v. BMW of N. Am., LLC*, 383 S.W.3d 201, 210 (Tex. App.—Dallas 2012, no pet.). The ultimate responsibility and control of LaCap remained with Williams and Memorial Hermann. Thus, neither the facts nor the law support a finding that Defendants controlled LaCap's tasks to the extent that a duty of reasonable care would arise.

    2.    Affirmative Course of Action

LaCap next argues that a duty arose when Defendants took an affirmative course of action to provide nonskid shoes. Specifically, LaCap maintains that there is a genuine issue of material

---

[2] The analysis of whether a party's "control" of another imposes a duty is also employed in the context of premises liability under Tex. Civ. Prac. & Rem. Code Ann. 95.002-.003. *See, e.g.*, *Union Carbide Corp. v. Smith*, 313 S.W.3d 370, 375 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 122-23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

fact as to whether Defendants undertook to secure nonskid shoes for her. LaCap, however, undermines this notion by asserting that Defendants were aware of several requests for shoes and of the hazards of stripping the floors without the equipment but "*never made any effort to secure the shoes.*" (Emphasis added). Nevertheless, viewing the evidence in the light most favorable to LaCap, the court finds that a duty did not arise under these circumstances. Generally, "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person . . . will not be injured thereby.*" Poynor*, 383 S.W.3d at 205 (citing *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395-96 (Tex. 1991)). The Restatement (Second) of Torts states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A; *see Poynor*, 383 S.W.3d at 205 (citing § 324A favorably); *Seay v. Travelers Indem. Co.*, 730 S.W.2d 774, 775-76 (Tex. App.—Dallas 1987, no writ) (same). "A mere promise to render a service[, however,] coupled with neither performance nor reliance imposes no tort obligation upon the promisor." *Sbrusch*, 818 S.W.2d at 396.

First, LaCap has not identified "an undertaking" that Defendants agreed to perform in terms of providing a safe workplace. No facts in the record suggest that Defendants assumed a duty to provide LaCap with nonslip shoes or other protective gear. Indeed, the contract stated that protective gear was not included in the supplies to be provided by Defendants to Memorial Hermann. Although Lacap testified that Defendants promised to provide shoes, mere promises

are insufficient to impose a duty without evidence of reliance. Even had Defendants been aware of the risk associated with stripping the floors without donning nonskid shoes, "mere knowledge of a dangerous situation imposes only a moral duty to warn or render aid, not a legal duty." TEXAS JURISPRUDENCE 3D, *Negligence* § 8 (2007). It is clear that Defendants did not undertake an affirmative course of action to provide Lacap with nonskid shoes so as to create a duty to use reasonable care.

                    3.        <u>Risk-Utility Test to Impose New Duty of Care</u>

Finally, LaCap asks the court to impose a new duty as a matter of law based on the foreseeability that LaCap's injury would result if she was not provided with nonskid shoes. LaCap marshals the following facts in support of her argument: (1) Perales, Medi-Dyn's employee, was responsible for supervising the stripping of the floor including the equipment that was to be worn; (2) Medi-Dyn made nonskid shoes available to housekeeping employees in Beaumont; (3) Perales knew the danger involved in stripping the floor without wearing nonskid shoes; (4) Stacey Whitfield ("Whitfield"), another of Medi-Dyn's employees, worked on site as LaCap's supervisor, solicited LaCap's help with stripping/waxing the floor, was aware LaCap wanted nonskid shoes, and was aware of the hazards associated with not wearing special shoes; and (5) Perales requested nonskid shoes from his supervisor the day LaCap slipped but before he was aware of her fall.

LaCap argues that these facts demonstrate that the injury was foreseeable and likely and, thus, Defendants had a duty to provide the shoes to prevent such an injury. Further, LaCap contends that the burden on Medi-Dyn to provide the shoes was minimal as the shoes were already

available to the Housekeeping Department in Beaumont.[3] Without conceding that the injury was foreseeable, Defendants maintain that the nature of their relationship with LaCap compels a finding that no duty be imposed under these circumstances. Namely, Defendants argue that as independent contractors, without any employer-employee relationship with LaCap, their relationship was too attenuated for a legal duty to exist. The court agrees.

LaCap's representation of the facts is inaccurate. Perales never testified that he was responsible for "supervising" the stripping of the floors, including the safety equipment that was to be worn. Instead, Perales's deposition states that he would make recommendations or suggest tasks that should be completed, including stripping the floor, and that he was responsible for making sure the work was being done. He also characterized Defendants' contract with Memorial Hermann as requiring Defendants to train managers, provide supplies, and make rounds. He confirmed that Defendants provided safety videos and training materials and that "[t]he responsibility was to provide [Williams] with all the necessary materials, train him correctly how to use them, and then he will turn around and train the employees." In her affidavit, LaCap also asserts that Whitfield, Medi-Dyn's employee, asked her to perform floor technician duties and assist him with the floor waxing. Although Defendants do not dispute this assertion, it is clear that, on the day of the incident, Williams, who was not an employee of Defendants, assigned LaCap the task of stripping the floor. The remaining evidence cited by LaCap indicates that Defendants were aware of the risk of not having the shoes and had the ability to provide them. The court notes, however, that according to LaCap's and Perales's testimony, other housekeepers

---

[3] LaCap also asserts that the burden on Defendants to provide the shoes was minimal because it was within the scope of the contract. As already discussed, however, the Baptist Hospital contract does not require Defendants to furnish nonskid shoes to Memorial Hermann employees.

and floor technicians wore their own shoes and, during his time overseeing the Environmental Services at the Beaumont and Orange hospitals, Perales did not provide nonskid shoes to any hospital employees who were performing any type of floor cleaning, buffing, or stripping.

Given the relationship of the parties, Defendants' course of action, and the plain language of the contract, the court finds that these facts do not establish a duty on the part of Defendants to provide a safe workplace for LaCap. Merely because the risk involved in operating the stripping machines was known by Defendants and the injury was foreseeable are not determinative. Indeed, "foreseeability alone is not sufficient to justify the imposition of a duty." *W. Houston Airport v. Millennium Ins. Agency, Inc.*, 349 S.W.3d 748, 754 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *City of Waco v. Kirwan*, 298 S.W.3d 618, 624 (Tex. 2009)); *accord Gatten v. McCarley*, 391 S.W.3d 669, 676 (Tex. App.—Dallas 2013, no pet. h.). "[T]he nature of the relationship between the plaintiff and defendant is a significant consideration in determining the existence of a duty of care." *W. Houston Airport*, 349 S.W.3d at 754 (citing *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 34 (Tex. 2002)). LaCap was not an employee of Defendants and, "while Texas courts recognize a number of nondelegable duties owed to one's own employees, they have recognized very few such duties with respect to nonemployees." *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 652 (Tex. 2007) (citing cases recognizing the following nondelegable duties owed by employers: to hire competent coemployees, to provide safe workplace, to provide safety regulations for employees). LaCap was not operating the machine on Defendants' premises, under Defendants' control or supervision, or with their direction.

Moreover, in determining whether to recognize a new duty, courts also consider: (1) whether one party had a superior knowledge of the risk, (2) whether a party had a right to control the conduct of another, (3) whether societal changes require the recognition of new duties, (4) whether the creation of a new duty would be in conflict with existing statutory law, and (5) whether there are countervailing concerns that would support or hinder the recognition of a new duty." *Gonzales*, 305 S.W.3d at 189-90 (citing *DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 409-10 (Tex. App.—Tyler 2008, no pet.) (citing *Thapar*, 994 S.W.2d at 639-40; *Bird*, 868 S.W.2d at 769; *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 310 (Tex. 1983))). As to the first consideration, Memorial Hermann, as the employer of LaCap, was in the best position to respond to LaCap's demands. Although Defendants were aware of the danger in stripping the floors without special shoes, part of their contractual duty, which the evidence demonstrates was fulfilled, was to pass this information along to Memorial Hermann. Moreover, as discussed above, Defendants did not have the right of control over LaCap's activities and well-being. Further, because Memorial Hermann had a duty to provide a safe workplace for LaCap, the recognition of a new duty on the part of an independent contractor to prevent this type of injury is unnecessary. Finally, LaCap did not identify, and the court was unable to locate, any Texas courts imposing a duty on a party under similar circumstances. For these reasons, the court finds that there was neither an existing duty under the facts of this case nor good reason to impose a duty as a matter of law on the part of Defendants to provide LaCap with nonskid shoes.

III.     Conclusion

Accordingly, Defendants' Motion for Summary Judgment is GRANTED. Because the court finds that Defendants did not owe LaCap a duty of care, her negligence claims fail, and Defendants are entitled to judgment as a matter of law.

SIGNED at Beaumont, Texas, this 12th day of June, 2013.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE